RECEIVED

SEP 1 2 2016

DEBORAH S. HUNT, Clerk

No. 16-1399

IN THE UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

ERIC DEXTER WELCH,

*Defendant – Appellant.*

On Appeal from the United States District Court

For the Western District of Michigan

No. 2:10-cr-08

## REPLY BRIEF FOR APPELLANT Eric D. Welch

ERIC D. WELCH, *pro se*
USM # 10444-089
P.O. Box 1000
Marion, IL  62959

Prepared by:
William Coustin, Jailhouse Lawyer
USM # 57217-019
USP – Marion
P.O. Box 1000
Marion, IL  62959

## Table of Contents

STATEMENT OF JURISDICTION ............................................................................. 1
PROCEDURAL POSTURE ....................................................................................... 1
OVERVIEW OF THE CASE: STANDARDS OF PROOF AND REVIEW ....................... 2
ISSUES MISREPRESENTED ...................................................................................... 5
STATEMENT OF THE CASE .................................................................................... 6
SUMMARY OF THE ARGUMENT ........................................................................... 14
ARGUMENT .......................................................................................................... 16
CONCLUSION ....................................................................................................... 25

## Table of Authorities

CASES

*Berger v. United States*, 295 U.S. 78,88 (1935) ------------------------------------------- 26
*Carney v. Jefferson County Fiscal Court*, 53 Fed. App'x 343 (6th Cir. 2002)-------------------------2
*Castro v. United States*, 540 U.S. 375 (2003) ---------------------------------------------- 27
*Conley v. Gibson*, 355 U.S. 41 (1957)------------------------------------------------------4
*Haines v. Kerner*, 404 U.S. 519 (1972) -----------------------------------------------------2
*In re Shelton*, 295 F.3d 620 (6th Cir. 2002)-------------------------------------------------- 27
*Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)--------------------------------------- 26
*Payne v. Chandler*, 1998 U.S. App. LEXIS 20547 (6th Cir. 1998) --------------------------- 25
*Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 608 (7th Cir. 1993)--------------------1
*Shearer v. Morgan County Circuit Court*, 2005 U.S. Dist. LEXIS 20435
      (E.D. Ky. Sept. 19, 2005) --------------------------------------------------------------3
*Sierra Club v. Robertson*, 28 F.3d 753 (11th Cir. 1994)--------------------------------------1
*Turker v. Ohio Dep't. of Rehabilitation and Corrections*, 157 F.3d 453 (6th Cir. 1998) --------5, 16
*United States v. Field*, 756 F.3d 911 (6th Cir. 2014)-----------------------------------------3
*United States v. O'Dell*, 805 F.2d 637 (6th Cir. 1986)--------------------------------------- 24
*United States v. Robinson*, 1997 U.S. App. LEXIS 27806 (6th Cir. 1997) -----------------------6
*United States v. Seago*, 930 F.2d 482 (6th Cir. 1991)---------------------------------------- 20
*Walker v. Mich. Dep't. of Corr.* 128 Fed. Appx. 441 (6th Cir. 2005) -----------------------5, 17
*Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989) -------------------------------------------- 27
*Wilson v. United States*, 969 F.Supp 1054  (E.D. Mich., 1997) --------------------------------3

STATUTES

28 U.S.C. § 1291 -------------------------------------------------------------------------2
28 U.S.C. § 1746 --------------------------------------------------------------------passim

OTHER AUTHORITIES

*Blacks* Law *Dictionary*, Ninth Edition (2009)------------------------------------------------ 22
John H. Wigmore, *A Student's Textbook of the Law of Evidence*------------------------------------ 22

RULES

Fed. R. App. Pro. 28(e): ---------------------------------------------------------------- 14
Fed. R. Civ. Pro. 60(b) ------------------------------------------------------------------2
Fed. R. Evid. 102 ------------------------------------------------------------------------ 22
Fed. R. Evid. 602 ------------------------------------------------------------------------ 22

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case because the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument.

## STATEMENT OF JURISDICTION

The Government's statement of jurisdiction is fair and accurate on all but two accounts. First, "On February 24, 2016, Welch filed a motion for new trial…," should actually read "On February 24, 2016, Welch filed a motion for status/hearing…" [*Compare* App. Doc. #11: Answer at 5; *with* 2:10-cr-08, R. 91: Motion for Status/Hearing].

Second, this Court has appellate jurisdiction to review the orders denying the motion for status, the reconsideration, and the motion to correct[1]. See "Notice of Appeal". [App. Doc. #1]. The parties agree on appellate jurisdiction under 28 U.S.C. § 1291.

## PROCEDURAL POSTURE

The district court agreed without discussion that the issues on appeal were raised prior to any other post-trial motion. However, one of the Government's straw men is raising already litigated issues for the sole purpose of saying they were already litigated. [*Id*. at 15, citing 2:10-cr-08, R. 85: Order of USCA, ID#1213-14].

To be sure, the district court made one tangential finding regarding Welch's testifying at his own trial: it's ruling assumed that counsel did not advise him about

---

[1] *Sierra Club v. Robertson*, 28 F.3d 753, 756 n.3 (11th Cir. 1994) (Appeals encompass all nonmoot interlocutory orders, appealable or not, rendered along the way; citing to *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 608 (7th Cir. 1993).)

1

his right to testify. [2:13-cv-115, R.40: Order at ID#559]. But, the actual basis was unreasonably bad advice against testifying. The district court did not rule on the unrebutted evidence that Mr. Dobias said that Mr. Welch's testimony would cause a mistrial. Confusing materiality with discoverability, the Government doesn't mention they knew defense counsel blocked evidence they knew was dispositive, and suggests (or supposes) it is okay to overlook or ignore Welch's two sworn affidavits to deny the mistrial claim. (See the Statement of the Case, below).

## OVERVIEW OF THE CASE: Standards of Proof and Review

When Steven Carney wrote a single *pro se* letter asking to "re-open his case," the district court (1) applied *Haines v. Kerner*, 404 U.S. 519 (1972), and let the man be heard by taking evidence in either a hearing or amended filings; and (2) the court ultimately acted on the one-line request as a motion under Fed. R. Civ. Pro. 60(b). *Carney v. Jefferson County Fiscal Court*, 53 Fed. App'x 343 (6th Cir. 2002).

When Stacy Field wrote a single *pro se* letter asking that the court "expunge her record of arrest," the district court (1) applied *Haines v. Kerner*, and let her be heard, taking evidence in amended filings with the assistance of newly appointed counsel; and (2) the court acted on the simple request as a "motion to expunge"

which *began* with her letter, and ended only after granting her the opportunity to plea her facts. *United States v. Field*, 756 F.3d 911 (6th Cir. 2014).

When inmate Kevin Wilson wrote a single *pro se* letter to the court, informing them that he "totally forgot" to request that his federal sentence run concurrently with his state sentence, the district court (1) looked passed all the frivolous arguments in his letter, and applies *Haines v. Kerner*, and let the man be heard, by (2) acting on the one-line request (buried in his letter) by construing it as a 2255. *Wilson v. United States*, 969 F.Supp 1054 (E.D. Mich., 1997).

When inmate Miquel Shearer wrote a single *pro se* letter asking about obtaining records, he also mentioned that his mail was being opened by correctional staff. The district court (1) applied *Haines v. Kerner* and let the man be heard, by (2) looking past the frivolous complaints and took the *initial* steps by allowing a § 1983 action to commence (which necessarily included pleading additional facts in the formal manner.) *Shearer v. Morgan County Circuit Court*, 2005 U.S. Dist. LEXIS 20435 (E.D. Ky. Sept. 19, 2005).

At bar, inmate Eric Welch wrote several *pro se* letters and supplemented them less than three years after trial (in additional filings sworn "as an affidavit" under 28 U.S.C. § 1746). When nothing happened, he moved for status. The initial letters asked to (a) "dismiss this case," (b) asked for a hearing "to present…in

3

person," and (c) asserted a "mistrial" would occur if he had taken the stand in his own defense. [2:10-cr-08, R. 48-50: Letters, *passim*].

After mis-filing the status request several times (as discussed in Mr. Welch's opening brief), the district court focused on the *pro se* frivolities and did a square dance around Supreme Court precedents of *Haines v. Kerner* and *Conley v. Gibson*, 355 U.S. 41 (1957), never once mentioning them.

So, the question naturally arises: if Steven Carney's single *pro se* letter carried within it a line asking to "re-open his case" (and the district court permitted HIM a formal forum to amend facts), then why did the district court at bar not apply the rule for *pro se* pleadings to the facts of Mr. Welch's one-line request to "dismiss this case," (along with additional facts from the supplemental filings?) Appellant's Motion for Status opened with the following:

> Movant (at the time) was unaware of how to properly label a motion, or frame issues against [his case]. Movant was confused and unaware of the law governing motions at the time, but would have filed a *proper one* if the Court had responded in any way to the several letters he wrote. [R. 91, ID#1224]. (Emphasis added).

Since, if Stacy Fields' one-liner to "expunge her record of arrest," and if Kevin Wilson's complaint that he "totally forgot" to request a concurrent sentence, and Miquel Shearer's inadvertent mentioning that prison officials were impermissibly reading his mail, each triggered a *Haines/Conley* level of proof....then the Government's assertion of an abuse-of-discretion standard simply

does not yet apply. Rather, the burden is on the Government to prove – beyond

doubt – that Welch "could prove no set of facts in support of his claim which

would entitle him to relief." [App. Doc. #7:Appellant's *pro se* Brief at 2].

Review for short-changing the whole formal pleading process is *de novo*, for

*Haines/Conley* error for denial for failure to state a claim upon which relief could

be granted. *Turker v. Ohio Dep't. of Rehabilitation and Corrections*, 157 F.3d 453

(6th Cir. 1998) (Review of a district court dismissal for failure to state a claim is *de*

*novo* applying the *Haines* standard to *pro se* pleadings); and will affirm a dismissal

only if it is "beyond doubt" that Mr. Welch could prove no set of facts which

would support a grant of relief. *Walker v. Mich. Dep't. of Corr.* 128 Fed. Appx.

441 (6th Cir. 2005) (citing *Haines* 404 U.S. at 520-21).


## ISSUES MISREPRESENTED

The Government only presents pieces of the "Issues Presented." [*Compare*

App. Doc. 7: Pro se Appellant's Brief at internal pp. 1-2, 12, 14; *with* App. Doc.

11: Answer at 6]. To clarify that misrepresentation, Appellant's opening brief

essentially contained the following two issues:

I.      Taken together, the question is not whether a formal new trial motion had

been filed; but rather, has the district court decided that Mr. Welch (beyond doubt)

"could prove no set of facts in support of his claim which would entitle him to

relief?" At the risk of being repetitive, therefore, the real issue is whether the district court erred in its decision (outside of the *Haines/Conley* standard of proof) when it ignored the letter filings and supplemental facts in the first place, or, in the Motion for Status[2]?

II.     Or as another issue, whether or not the district court erred (after moved for status) when it failed to appoint counsel, and also erred under *United States v. Robinson*, 1997 U.S. App. LEXIS 27806 (6th Cir. 1997)?

**STATEMENT OF THE CASE**

The Government's statement of the case is fair and accurate to a point. However, the Government's answer obscures their knowledge that defense counsel prevented Mr. Welch from pleading additional facts and filings:

On November 16, 2010, immediately after Mr. Welch filed three letters *pro se*, defense counsel directed him not to file anything else. Mr. Dobias asked that he "[p]lease refrain from filing anything else until prior to the time of sentencing. At the least, consult with me prior to sending anything else to the District Court Clerk." ... "I must add at this point that I can understand why you are doing this.

---

[2] Which assembled all that had been filed in the first three years after trial, plus explanatory notes.

However, your efforts are complicating the situation more than you may understand at this time." [Exhibit A].

Whatever the reason for the Government's lack of candor, their access to Exhibit A (Dobias Letter), cannot be reasonably contested. [2:13-cv-115, R. 11: Order granting Government's discovery and waiving attorney-client privilege]. The Government cannot argue that Mr. Welch was not ready to move on a new trial fact-finding, because they knew or should have known he was directed to wait by counsel.

In order to delay the fact-pleading concerning counsel advising Welch one way at trial ("a mistrial would occur"), and another thing weeks after trial ("that a mistrial would not have occurred[3]"), defense counsel made sure his performance "until sentencing" still hung in the balance.

Thus, Mr. Welch was forced to file the explanatory facts in April of 2013, instead of November of 2010. However, according to law, so long as he filed them less than three years after trial (which he did), and so long as the information he learned weeks after trial was unavailable to him at trial (i.e. newly discovered), then requesting a *Haines/Conley* treatment was proper.

---

[3] Unknown by defendant at the time of trial.

At bar, the district court considered the issue as raised prior to any other post-trial motion. Thus, if we take the Government's position without analysis (the collective total of the previous filings were "not a motion for new trial"), then, what *were* they?

Overall, the Government inaccurately portrays the "Issues Presented" in a half-truthful, misleading way, and then forces forward the framework of an "abuse of discretion" standard, by skipping the whole formal pleading part of the process (with independent counsel). The initial, informal pleadings asked for that opportunity, and even if we raise the bar to an abuse of discretion standard, the clearly erroneous fact finding (missing the sworn statements, request for dismissal and a hearing), and not applying the *Haines/Conley* legal standard warrant attention.

### For Completeness, The Following Record Entries And Data Are Missing Or Incorrect In The Government's Statement Of The Case:

1.  Identity vs. *Mens Rea* (or, "Whodunit" vs. "I Was There, But Had No Knowledge Of Or Access To Any Contraband").

Demonstrated below, the "harm" of testifying that the Government is talking about pertains to one of two (mutually exclusive) strategies. (1) If "identity" were an issue (i.e. if defendant claimed "it wasn't me, it was one of twenty others who had access to my computer"), or (2) *mens rea* on how computers operate ("*unknowing possession*".)

As to "identity" as a strategy, the parties agreed several times at the pre-trial conference that evidence of Mr. Welch's prior offense would not be submitted to the jury unless two things happened: If Mr. Welch took the stand in his own defense <u>and</u> if identity is placed into issue. [2:10-cr-08, R. 70: Transcript Vol. I of II at 7].

Under no other recorded theory of cross-examination would the evidence of Welch's prior conviction enter before the Jury. The parties and the district judge agreed to these terms about four times in seventeen pages of pre-trial conference. [*Id*. at 5-22]. Which gets to the real issue of testimony of knowledge the Government says would have changed the outcome. "A man generally has two reasons for doing a thing – one that sounds good and a real one." ~J. Pierpont Morgan.

Defense counsel fudged winning at trial by not permitting Mr. Welch to provide the "real reason." For, the reason that sounded good (i.e. "harm" as a cause for not testifying), concerned cross-exam on the prior conviction before the Jury, only if it had to prove identity (i.e. who was behind the computer at the time.) [*Id*.]. But, in a later affidavit defense counsel contradicts the record identity reason, with a "knowledge" of propensity (not relevant to keeping Welch's sketchy knowledge of computer operations and their defensive mechanisms from the Jury.)

In the context of the motion for status, the record reason for allowing the Government to chew on "identity," was to permit Welch to take the stand to create doubt on *mens rea* on computers. The Government conceded a different outcome, essentially, if Mr. Welch only testified that he "had no reason to believe there was child pornography on the computer." [2:13-cv-115, R. 4-2: Welch Aff., ID#183]. And, that he "took all the necessary steps to avoid poisonous results of contraband flying by in a porn storm. [He] had no idea the stuff was in the background somewhere, and certainly never manually saved contraband." [*Id.* at ¶11]. And further, that he learned a forensic expert averred in an affidavit that the examined hard drive copy revealed "no direct evidence that Mr. Welch had access to [the images] located in unallocated space." [*Id.*, R. 4-4: Kelly Aff. At ID#283]. After all, the trial testimony set forth facts that tended to show the computer was intentionally protected from incoming images, but failed to explain (as Welch's testimonial evidence untainted by mistrial assertions would have) that the computer default dumped data into unallocated space without any user interaction.

The combined facts in the motion for status elevated to our attention that Welch "deliberately did not take the stand not only to avoid possible further harm…" was simply the reason that sounded good (identity). The point "to avoid constant and inevitable mistrials," (discovered weeks later as false) impermissibly

prohibited him from testifying. [2:10-cr-08, R. 48: Letter ID#124; and 2:13-cv-115, R.2: 2255 at ID#23, R. 2-1 at ID#77].

2.    Learned Language

The part about avoiding "constant and inevitable mistrials" is "learned language." [2:10-cr-08, R. 48: Letter, ID#124]. Learned language is not something a *pro se* litigant is familiar with. For example, if your layman neighbor mentions he is thinking about installing something in his basement to address the "phase angle" of his electricity usage to correct his "power factor," you would not only look at him strange (and ask what he meant), but also wonder where he learned "phase angle" and "power factor," knowing he is a produce specialist at Wal-Mart. So too here. "Constant and inevitable mistrials" is something Mr. Welch was parroting from defense counsel's erroneous advice. By contrast, the request to "present in person prior to December 14, 2010 would be met with gratitude and acceptance," was an inartful request for a hearing, and not learned from counsel.

Missing from the Government's version of the statement of the case is that the defense of "unknowing possession" was sabotaged by counsel's "mistrial advice." [2:13-cv-115, R.2: 2255 at ID#23, R. 2-1 at ID#77, sworn as an affidavit in *Id*. at R., 1-1 at ID#1]. The Government's frivolity comment ignores that if new counsel had been appointed, much of Mr. Welch's frivolous material would have

disappeared in amended, counsel-prepared submissions. Almost certainly, all *pro se* filings contain some frivolity.

3.    "Dismiss This Case" (Because I Don't Know How To Ask For A New Trial).

While likely not a major impediment to intelligibility, it bears mentioning for completeness that the Government's statement of the case omits the dismissal request. [App. Doc. #11:Answer at 9]. (But, to be fair, the entry does appear mixed in with a gloss on frivolities in their argument section.) [*Id*. at 16]. In citing to the letter [2:10-cr-08, R. 50], the Government dodges a main record entry statement that caught the clerk's attention when she filed it: the one-line request to "dismiss this case." This is important, because it would have been the right time for the Government to mention Mr. Dobias' concerned letter, ostensibly blocking any further fact pleading.

4.    28 U.S.C. Section 1746 Carries "Like Force And Effect" As An Affidavit

The Government's statement of the case erroneously evades that Mr. Welch's <u>entire</u> supplemented claims and additional facts were sworn-to "as an affidavit" under 28 U.S.C. § 1746, "I declare under penalty of perjury, that the foregoing [captioned habeas corpus] is true and correct." [2:13-cv-115, R.1-1: 2255 at ID#1; see also R. 2-1, text entry adopting signature page to the entire 2255]. The counsel complaint was sworn "as an affidavit" therein.

5.      Affidavit Inside An Affidavit

Also incorrect in the Government's statement of the case is that Mr. Welch

filed an additional Affidavit (out of an abundance of caution), as "Exhibit F." [*Id.*

at R. 4-2, ID#180]. That affidavit *also* adopted-by-reference the entire 2255: To-

wit, in ¶1 Mr. Welch swears "[u]nder 28 U.S.C. § 1746, I declare under penalty of

perjury that the foregoing [above-captioned Habeas Corpus, Orig. Case No. 2:10-

cr-08-RAE] is true and correct [.]"

So, Mr. Lochner commits to an erroneous finding of fact in saying that Mr.

Welch's "*affidavit*…does not, however say anything about his trial defense

attorney's advice not to testify." [App. Doc. #11 at 10] (emphasis added). By

contrast, the record's doubly sworn affidavit/motion mentions – and twice at that –

that defense counsel "made an end-run around the adversarial process…by

instructing Welch to not take the stand: Because [it]…'would result in an

automatic mistrial.'" [See ¶4 above; see also 2:13-cv-115, R. 2 at ID#23, and R. 2-

1 at ID#77 (internal page no.'s 3 and 57, Ground II(B)).]

6.      Defense Counsel's Affidavit Avoids the Mistrial Misadvice

The Government' statement of the case confuses the fact that Mr. Dobias

never squarely confronted the mistral misadvice in his answering affidavit.

[*Compare Id.*, *with* 2:13-cv-115, R. 20: Affidavit, ID#378]. But, rather, without

mentioning the identity issue, counsel's affidavit doesn't say why he advised

Welch about an "automatic mistrial."

7.    Repeat Error Often Enough and People Will Believe It

The Government again incorrectly identifies a record entry, *contra* Fed. R.

App. Pro. 28(e): The Government repeats error from its own version of a

jurisdictional statement (misidentifying the "Motion for Status/Hearing," as a

"Motion for New Trial, ID#1224-43." [*Compare* 2:10-cr-08, R. 91 text entry; *with*

Appeal Doc. #11 at 12]. The last page of the Government's Statement of the Case

also omits the supplemented facts as part of the record.

## SUMMARY OF THE ARGUMENT

Under *Haines / Conley*, Mr. Welch requested an opportunity to file a motion

for new trial (albeit in pieces, and *pro se*.) Taken together, the three letters and the

supplemented evidence pled sufficient facts under the law to warrant counsel and

further fact finding, as *Carney*, *Field*, *Wilson*, and *Shearer* all demonstrate above.

The Government acknowledges that the district court criticized the frivolous

material in Welch's letters, and took no action on the valid one-line request to

dismiss his case. After the letter's dismissal request, the Government knew that

defense counsel interfered with his fact-pleading. The Government could argue

that counsel was doing his job by asking Welch to stop writing. Defendant's

generally are not permitted to file pleadings. Counsel could have had the letters

stricken, but he didn't. Instead, counsel chose to communicate with Mr. Welch, telling him to stop.

Mr. Welch did not have the legal knowledge to present his claims concisely. But before additional facts were pled, counsel shut Welch up by mentioning that the sentencing still lay ahead. Welch's concerns were if he proceeded further, counsel would underperform at the sentencing proceedings. For, defendants are entitled to adequate representation of counsel, not perfect representation. And there is a broad spectrum of conduct encompassed in adequate representation. Counsel's communication had a chilling effect on Welch, to the point of stopping all communication with the court for a substantial period of time.

At bottom, the Government confuses the reader into believing it was not the "mistrial misadvice" which was newly discovered (weeks after trial, logically prompting the letters); but rather erroneously asserting it was Welch's "potential testimony" that was claimed as newly discovered. That false assertion will later on prove to undermine the Government's "no new trial" argument under *O'Dell*[4].

The Government does not contest its previous position that the outcome for Mr. Welch would be different in a new trial. Accordingly, the letters can

---

[4] *United States v. O'Dell*, 805 F.2d 637 (6th Cir. 1986). The parties agree and have both independently arrived at the four-prong new trial request criteria and therefore, is not repeated here.

reasonably be read as a request for filing a motion for a new trial, and the court was under obligation to allow Welch to be heard. The Government has failed to prove "beyond doubt" that Welch "could prove no set of facts" that would warrant relief.

Even if Welch's letters <u>and</u> supplemented material evidence could not be read as a request to file a motion for a new trial, the district court incorrectly denied the motion for status/hearing. Though the Government has argued that all of the filings (letters, supplements, status/hearing) could not be interpreted as a filing request, then the district court abused discretion because the decision (outside the *Haines/Conley* standard of proof) is not supported by the evidence, or proceeds beyond the evidence and the law.

## ARGUMENT

I.    The District Court Erred In Deciding That Mr. Welch – Beyond Doubt – "Could Prove No Set Of Facts In Support Of His Claim Which Would Entitle Him To Relief" *Haines/Conley*. The District Court Erred In Its Decision When It Ignored The Letter Filings And Supplemental Facts.

The Government's re-framing of the issue, and therefore its argument, is unavailing. The standard of proof and burden are clearly outlined in *Turker v. Ohio Dep't. of Rehabilitation and Corrections*, 157 F.3d 453 (6th Cir. 1998) (Review of a district court dismissal for failure to state a claim is *de novo* applying the *Haines* standard to *pro se* pleadings); and will affirm a dismissal only if it is "beyond

doubt" that Mr. Welch could prove no set of facts which would support a grant of relief. *Walker v. Mich. Dep't. of Corr.* 128 Fed. Appx. 441 (6th Cir. 2005) (citing *Haines* 404 U.S. at 520-21).

Mr. Lochner sides with the district court's skipping over basic pleading rights for asserting a claim under *Haines/Conley* (complete with a right to give testimony at a hearing or to file amended pleadings with newly appointed counsel.) The effect is burden-shifting *from* the (Government or the) district court having to prove "beyond doubt;" *to* Mr. Welch theoretically having to prove "abuse of discretion."

But, the Government doesn't explain what legal ramifications the *pro se* letters had, by ignoring the "stop filing" directive to Welch (ostensibly it helped AUSA Lochner to not tell this Court about his record evidence.) Diligently, Welch filed supplemented facts (under three years) explaining it was counsel's deceptive advice that a mistrial would occur, and that it would not occur was not available to Welch at trial (and *that* claim was never ruled on, either, see below.)

The Government concedes that the letters Welch submitted to the district court after the jury verdict in his case are *pro se*, but elevates the frivolous to gloss over the non-frivolous material. For example, repeating Welch's statement of "continuing efforts of his trial defense counsel in preparation for sentencing," only provide context and do not contradict the issue at bar. [App. Doc. #11: Answer, at

15]. Also, the Government acknowledges that his state-court pleas to accosting a minor for immoral purposes and a telecommunications access violation as "double jeopardy" issues are irrelevant to the substantive, initial three-part requests (mistrial misadvice, dismissal request, and hearing requests).

As mentioned earlier, one of the Government's straw men is their raising already-litigated issues for the sole purpose of saying they were already litigated. [*Id.* at 15, citing 2:10-cr-08, R. 85: Order of USCA, ID#1213-14]. The district court at bar, however, took no issue with addressing a request for a motion for new trial, because Welch's three-part requests were raised *prior* to any other post-trial motions. Thus, the Government's "re-litigation" bogey man is refuted by both the record, and by the district court orders.

Worth repeating, the district court made only one record finding regarding Welch's testifying at his own trial: It said Welch complained that counsel did not advise him about his right to testify. [2:13-cv-115, R.40: Order at ID#559]. The district court stopped there, however, and did not rule on, nor develop the record discussing the unrebutted evidence that Mr. Dobias said that Mr. Welch's testimony would cause a mistrial.

One problem is the Government suggesting it is okay to overlook or ignore Welch's two sworn record affidavits to deny the mistrial claim. [App. Doc. #11: Answer at 11-12]. The other problem is that without a hearing the facts were not

permitted development (hearing, mistrial, and new trial as a "dismissal" request.)

The Government's reliance and hoisting up a COA denial is a re-litigation straw

man; it is the manifest example of how squashing facts are *a priori* clearly

erroneous fact finding.

In argument, the Government grudgingly agrees that Mr. Welch requested to

dismiss the case. In short, Welch's letters are nothing less than a request for relief

that the district court had authority to hear under *Haines / Conley* standards. The

Government implies that it cannot prove "beyond doubt" that Mr. Welch can prove

no set of facts that would entitle him to relief; but the Government does assume –

without proving – that a formal new trial request already happened.

II    A "No Mistrial" Testimony Is Newly Discovered Evidence (Where Welch
Only Learned This Truth Weeks After Trial); NOT That Mr. Welch's "Potential
[With Mistrial] Testimony" Was 'New'.

The Government's version of what is claimed as newly discovered is

incorrect: Mr. Lochner first characterizes Mr. Welch's "potential testimony" as

what was claimed as "newly discovered," when the record doesn't support that.

[*Compare* App. Doc. #11: Answer at 20 "Welch's potential testimony was not new

evidence discovered after trial," *with* the explanation of defense counsel's mistrial

deception (newly discovered after trial) as an "end-run around the adversarial

process." 2:13-cv-115, R.2: 2255 at ID#23, and R. 2-1 at ID#77 sworn as an

affidavit under 28 U.S.C. § 1746 in R. 1-1 at ID#1]. Mr. Welch later emphasized

(for clarity) that he "deliberately did not take the stand because he did not want an automatic mistrial. Welch was misled right out of his right to testify completely," [2:13-cv-115, R. 29: Preliminary Reply, ID#505, verified under penalties for perjury as true and correct in *Id*, R. 30, ID#508.]

The Government's entire argument under *United States v. Seago*, 930 F.2d 482 (6th Cir. 1991), depends on changing the premise: *From* Mr. Welch learning weeks after trial that no "mistrial" would actually occur, *to* a never-raised *piecemeal* premise of his trial testimony as "new." To further obfuscate the issue, the Government spends almost a full page talking about Rule 33(b)(2) (14-day limit not based on newly discovered evidence). [App. Doc. #11: Answer at 17-18]. This is a waste of ink. A reasonable reading of Welch's letters and other post-trial material would lead (apparently anyone but) the district court to understand that they constituted a request to file (among other things) a motion for new trial (dismissal request, mistrial misadvice at trial, changed to no-mistrial-would-have-occurred after trial, and a hearing or in-person request); taken together with the supplemented *pro se* letter filings, the Government knew or should have known it was a Rule 33(b)(1) newly discovered evidence request, not a Rule 33(b)(2). After trial, the testimonial evidence changed (see below, after *Seago*.)

*Seago* is distinguishable. In *Seago*, the defendant admitted he was aware of his "new" evidence at trial. This Court rightly found that if the defendant knows

about some ineffective legal theory and testimony *at* trial, then he cannot use a Rule 33(b)(1) to "generally" complain of attorney ineffectiveness and request a new trial. *Seago* does <u>not</u>, however, stand for the proposition offered by the Government: that absolutely no ineffective counsel issues may be raised in a Rule 33(b) context[5]. When evidence – like here – comes up that the defendant did <u>not</u> know about until after trial, then a Rule 33(b)(1) is permitted.

There is nothing as stubborn as a fact, the saying goes. The fact that one man (or woman) cannot possibly know what is in another's mind, is one. Until defense counsel informed him after trial (about the no-mistrial fact), it was unknown to Welch. Not only is Mr. Welch not a mind reader, he also has no formal training in law and was relying on counsel's expertise (exactly why counsel is appointed to represent defendants under the Constitution).

Although, even without legal training, his personal knowledge is evidence that became newly discovered after trial as demonstrated by the Federal Rules of Evidence and the definition of testimonial evidence.

Testimonial Evidence

There are over eighty (80+) different types, or definitions, of "evidence" in *Blacks Law Dictionary*, Ninth Edition (2009). One of these is "testimonial

---

[5] That theory is further refuted by this Court. New trial requests based on ineffective counsel claims are permitted. *United States v. Soto*, 794 F.3d 635, 646-647 (6th Cir. 2015).

evidence," or the evidence of a witness at his own trial. Testimonial evidence is offered by a witness "with a view to persuading the tribunal of the matter asserted." (*Blacks*, citing to John H. Wigmore, *A Student's Textbook of the Law of Evidence.*" 120 (1935). It is based on personal knowledge.

Which brings us to the sixty-seven (or so) Federal "Rules of Evidence." Relevant here are Fed. R. Evid. 102, and Fed. R. Evid. 602. Rule 102 ensures that "the truth may be ascertained and proceedings justly determined."

At bar, Mr. Welch's Rule 602 (personal knowledge) evidence changed due to counsel's interference with, or ignorance of, Rule 102. Mr. Welch's personal knowledge testimony under Rule 602 was newly discovered after trial. At trial, his potential testimony evidence was lacking information later discovered.

To illustrate, during trial his view of his testimonial evidence tended to persuading the tribunal of a mistrial. Part of the definition of testimonial evidence is what matter it tends to persuading the tribunal. That is, under Rule 602 the *mistrial* was part and parcel of Mr. Welch's personal knowledge testimonial evidence; any exculpatory evidence included a mistrial tainted by counsel's advice running afoul of Rule 102.

After trial (after discovering a mistrial would not occur), Mr. Welch's Rule 602 personal knowledge tended to persuading the tribunal of an acquittal (a new

and different evidence); the testimonial evidence changed its view of the matter asserted *from* persuading the tribunal of a mistrial, *to* persuading the tribunal of an acquittal.

The Government is correct in saying "Welch's *potential testimony* [with a mistrial directive] was not new evidence discovered after trial." But, if the Government's reading of *Seago* were correct, it would not have had to change the premise. *Seago* actually advocates in Mr. Welch's favor, instead.

The Government can only contend "the facts supporting the claim were within the defendant's knowledge at the time of trial," by assuming the record supports Welch's skill at mind-reading. [App. Doc. #11: Answer at 20]. Or, by assuming the Rules of Evidence do, too.

The Government further fails to explain, when identity <u>is not</u> an issue, how any alleged prior conviction issues would be brought before the tribunal. Mr. Welch's untainted testimony would narrowly focus on *mens rea* on how computers operate, not on interest in a fictitious Michigan State Police prostitute. [*Compare* 2:13-cv-115, R. 4-2: 2255, ID#183 ¶7, ¶11; *with* App. Doc. #11: Answer at 11].

Because, as the Government agrees, Mr. Welch's later-untainted Rule 602 testimony would more likely than not result in acquittal, then one prong of the four-prong test is met for a new trial. *United States v. O'Dell*, 805 F.2d 637 (6th

Cir. 1986)[6]. Further, because the Government gets what was claimed as "new evidence" wrong, so too the active interference before and after trial by defense counsel (*contra* Fed. R. Evid. 102), certainly chilled but did not freeze the doubly sworn-as-an-affidavit supplemental facts.

## The Final *O'Dell* Prong Has Been Met, Too

Now, the last *O'Dell* prong is all that is left to satisfy (the evidence is material and not merely impeaching). As to the "evidence" in question, only by conflating Welch's potential testimony's *materiality*, with its *discoverability* after trial, can the Government create the illusion that Mr. Welch's request to file a motion for new trial would fail. His Rule 602 testimony evidence was certainly different after trial as well. Advice is not the same as deception, and when the Government has already conceded the outcome-altering effect of the testimony, it must labor intensely to change the premise in its favor.

The Government also demonstrates that misreading the record fatally changes the outcome in a post-conviction appeal. [App. Doc. # 11: Answer at 12]. The opinion missed the benefit of the two affidavits in the record. By writing it out of history, the Government's falsehood in saying that a statement is *uns*worn, is a

---

[6] Under the record evidence presented at bar, Welch also satisfies two of the other prongs of the *O'Dell* test (evidence discovered after trial, and Mr. Welch's firm diligence).

clearly erroneous finding of fact. [2:13-cv-115, R. 49: Order of USCA, ID#649].

Mr. Welch's generous use of 28 U.S.C. § 1746 on the front end and back end of his

2255 has all the significance of an affidavit.

## CONCLUSION

The law is about rights in conflict. In *Payne v. Chandler*, 1998 U.S. App.

LEXIS 20547 (6th Cir. 1998), the district court liberally construed Payne's *pro se*

petition and considered all applicable statutes under which his claims could have

been brought in order to provide the right to be heard and due process, alongside

the overarching public interest in the fairness of proceedings in how courts operate.

At bar, why did the district court not afford the same fair treatment to Mr.

Welch? Why skip over the opportunity to appoint counsel, and allow counsel to

file a motion and plea facts formally? Why skip past all that and simply deny

claims as if Mr. Welch were a professionally trained lawyer held to higher exact-

language standards than what *Haines/Conley* requires that the district court

enforce?

Possible answers are, if in the looking for colorable allegations, one is

indolent; one ignores the record; one overlooks interference; one is overworked; or

one lies about statements being unsworn, then there emerges a lack of trust in the

Government's position. It is protecting its conviction over and against justice. The Supreme Court has told us in no uncertain terms that a prosecutor's duty is to do justice, not merely to obtain a conviction. See *Berger v. United States*, 295 U.S. 78,88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all, and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.")

That the testimony was prevented is one thing; what the testimony said, quite another. Under Rule 602, Mr. Welch's personal knowledge was new and different after trial, after counsel let on to his erroneous information. The Government suggests the district court could deny Mr. Welch his rights by saying it would have to "conjure allegations" on his behalf. [App. Doc. #11 at 16, citing *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)]. That is anything but true, for, as in *Seago*, so in *Martin*, the Government's authority actually favors Mr. Welch. *Martin* is a case reversed by this Court because (1) the inmate should have received notification before his *pro se* filing was recharacterized; and (2) the district court should have dismissed the *prose* filing without prejudice to allow the

inmate to raise his claim in a proper motion)][7]. [8] If that is what justice has come to, then "justice is the will of the stronger." [2:10-cr-08, R. 48 at ID#121-125].

Specific finding of fact falls under a clearly erroneous standard of review. What is more, the district court decision outside of the *Haines/Conley* standard of proof is not supported by the evidence, and is a misapplication of the law to the facts. The power of free decision making has boundaries. Those boundaries are the facts and the law. The standard of proof (as set by the Supreme Court and recognized by this Court), call for a judge deciding whether or not it appeared beyond doubt that Mr. Welch could prove no set of facts in support of his claim which would entitle him to relief. As such, the district court abused discretion by misapplying the law to the facts, and committing/relying on erroneous fact finding.

**WHEREFORE**, this Court should vacate the judgements below and order a new trial on the merits. Even if this Court sees things differently, it can vacate the three orders mishandling the motion for status, *pro se* letters and supplemental facts and order counsel appointed for the limited, criminal-case purpose of fact-

---

[7] At its core, *Martin* relies on *Wells v. Brown*, 891 F.2d 591 (6th Cir. 1989), which cited to the holding of (hold your breath), *Conley v. Gibson*'s pleading standards: "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

[8] By the way, both *Martin* and *Wells* utilized the requirements that the district court must clarify things with the *pro se* appellant, as announced in *Castro v. United States*, 540 U.S. 375 (2003); *In re Shelton*, 295 F.3d 620 (6th Cir. 2002). If the Government wants to use *Martin*, it ought to have followed it all the way through to its logical conclusion.

finding and amended pleadings in a new trial context that began only 40 days after

trial and diligently continues to this very day.

_September 9, 2016_
Date Executed

Under penalty of perjury pursuant to 28 U.S.C. §
1746, I declare that the foregoing is true and
correct. Further, that it has been deposited this
day in the institution's internal mail system
designed for legal mail, United States Postal
Service, first-class postage prepaid.

/s/ _Eric Welch_

Eric D. Welch, *pro se*
USM # 10444-089
P.O. Box 1000
Marion, IL  62959

## Certificate of Service

I hereby certify that a copy of the foregoing was mailed via United States Postal
Service, first-class postage prepaid, upon the following:

> AUSA Paul Lochner, Esq.
> U.S. Attorney's Office
> 1930 U.S. Hwy 41 West
> Marquette, MI 49855

/s/ _Eric Welch_

Eric D. Welch

**Form 6, Certificate of Compliance with Rule 32(a)**

*Certificate of Compliance With Type-Volume Limitations, Typeface Requirements, and Type Style Requirements*

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☒ This brief contains [6,330] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

❑ This brief uses a monospaced typeface and contains [_____] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complines with the typeface requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(5) and type style requirements of Fed. R. App. P. 32(a)(6) because:

☒ This brief has been prepared in a proportionally spaced typeface using Microsoft Word in [14 point, and Times New Roman], or

❑ This brief has been prepared in a monospaced typeface using Microsoft Word with [# characters/inch, and name of type style].

# MARK L. DOBIAS, P.C.
### Attorney at Law

903 Ashmun Street
Sault Ste. Marie, MI 49783
Telephone: 906.632.8440
Facsimile: 906.632.3878
e-mail: dobiaslaw@sbcglobal.net

## CONFIDENTIAL ATTORNEY-CLIENT MATERIALS

November 16, 2010

Mr. Eric Welch
c/- Marquette County Jail
236 W. Baraga Ave.
Marquette, MI
49855

**Re: USA v Welch**
   **File No.: 2:10-CR-8**
   **My file No. 1-2003**

Dear Mr. Welch:

November 16, 2010, I received two more filings from you from the US District Court for the Western District of Michigan, Northern Division. These do not help your case. Please refrain from filing anything else until prior to the time of sentencing. At the least, consult with me prior to sending anything else to the District Court Clerk.

I must add at this point that I can understand why you are doing this. However, your efforts are complicating the situation more than you may understand at this time.

I hope to see you within the next week to ten days to review the presentence report.

If you have any questions regarding this letter or anything else, please feel free to contact me.

Sincerely yours,

Mark L. Dobias
Attorney at Law

Dictated November 16, 2010 at 11:48 AM

*Exhibit "A"*

# AFFIDAVIT

For the Sixth Circuit Court of Appeals, No. 16-1399 "*United States v. Welch*"

I, William J. Coustin, hereby assert that the following statement is true and correct to the best of my recollection in substance And in fact to wit.

1) I am incarcerated by the Department of Justice, The Federal Bureau of Prisons, in the Marion U.S.P. under Reg. No. 57217-015, P.O. BOX 1000, Marion, IL. 62959.

2) I am a "jailhouse lawyer." I make a distinction between a jailhouse lawyer and a law clerk. A "jailhouse lawyer" is an individual who helps others do law work for personal reasons. A "law clerk" is an individual assigned by the institution to work in the law library and helps other inmates, as their institutional assignment.

3) U.S.P.- Marion does not have any law clerk assigned to the institutional law library.

4) Prior to my incarceration in the Federal Bureau of Prisons, I was incarcerated in the Illinois Department of Corrections.

5) While there I was assigned as a Law Clerk for six years.

6) I started learning law in 1991 while seeking visitation of my son.

7) I have taken several college courses in law, including Business Law, International Law, and an institutionally offered class on Constitutional Law. I have taken and passed the (law) skills test, which is designed by I.D.O.C. before you can be hired by I.D.O.C. as a "Law Clerk".

8) I have approximately 20 years experience in preparing and submitting law work.

9) I have prepared most of Mr. Welch's *pro se* pleadings to this Honorable Court since October of 2013.

10) That in general Mr. Welch can do research and find what he is looking for, however, he does not fully grasp how to phrase his requests to the court, in a logical & meaningful way.

11) Compared to the success I enjoyed in the state courts, I have found that the U.S. District Courts in general and Mr. Welch's specifically hold *pro se* litigants to a much higher standard than what should be required.

12) I don't believe distinct courts allow defendants to plead facts under oath and then allow for an evidentiary hearing, but expect incarcerated defendants to

Exhibit "B"  1

present evidence beyond what an incarcerated defendant is able to obtain, and present.

13) An example of this, is where Mr. Welch asserted that his attorney "explained" something to him. The government took issue with the claim because Mr. Welch didn't use the word "advised." Mr. Welch is *pro se* and his pleadings are entitled to a liberal interpretation. Mr. Welch's *pro se* "word choice" should not be the basis for rejecting his claim, as it raises the bar too high for untrained prisoner litigants...the very people *Haines v. Kerner* was intended to protect.

14) End of statement.

I, William J. Coustin, declare under penalty of perjury under the laws of the United States of America (and 28 U.S.C. § 1746) that the foregoing is true and correct in substance and in fact, to the best of my knowledge.

9/7/16
_____
Executed

_____
William J. Coustin, Attester
Reg. No. 57217-019
P.O. BOX 1000
Marion, IL. 62959.

Affidavit of William Coustin,
Page 2 of 2

*Exhibit "B"* 2



**U.S. Department of Justice**
**UNICOR**
**USP Marion, Illinois**



| | |
|---|---|
| **DATE:** | Wednesday, September 07, 2016 |
| **Supervisor:** | S. Whitecotton, Factory Manager<br>shawn.whitecotton2@usdoj.gov<br>Ph/618-964-2105 |
| **RE:** | Eric Dexter Welch,<br>USM # 10444-089 |

Eric Welch has been employed at UNICOR from April of 2011, up to and including the present day. Mr. Welch works in the areas of: (i) Electrical and Electronics Cable Production; (ii) Electrical Technology/Infrastructure Improvement; (iii) Material & Manufacturing Logistics; and (iv) Manpower Planning And Scheduling.

The skills which Mr. Welch uses that enable him to succeed at these positions are listed (but are not limited) to those named below:

1. **Awards, and Standards-Proficiency**:
   a. ISO 9001/2008 Manufacturing And Inventory Audits (Internal And External)
   b. Microsoft® Office Certified (2010)
   c. MSDS Accountability Enforcement
   d. Quality Assurance Program Testing (Accept/Reject Criteria, Electrical, Drawing Interpretation, QAM ISO, etc.)

2. **Electrical Power Distribution**
   a. 10KW, 15KVA, & 120KW sizes, built for NAVFAC
   b. 300KW Machine Shop upgrade. Unitized MV Substation-To-480Y/277 Distribution Equipment.

3. **Electronics Cable Assembly**
   a. Blueprint Reading and Interpretation, To Include But Not Limited To The Following Military Standards:
      i. A- A-595690
      ii. CHED- 227, Et Seq.
      iii. MIL STD 00100, ANSI Y.14, Et Seq.
      iv. MIS-36552, SC- SA-15110, Et Seq.
   b. Braiding, Sleeving, Boots, And Transitions (Heat-Shrink And Expansion Raw Material)

*Exhibit "C"*

     c.  Cable Lay, Wrapping, Tying, And Associated Operations For Form, Fit, And Function
     d.  Crimping & Pinning (Connectors, Adapters, Housings)
     e.  Electromagnetic Shielding, Grounding, And Bonding
     f.  Heat-Treated Boot Expansion, Gluing, Sealing, And Testing To Environmental Specs
     g.  Mechanical And Thermal Stripping
     h.  Soldering (Certified J-STD-001)
         Tin, Solder Splices, Solder Sleeves, Turret, Cup, Bifurcated, and J-Hook Soldering

4. **Hardware**
     a.  Settings & Set-Up for Cable and Equipment Interconnect and Procedures
     b.  Shelf-Life Calculations
     c.  Diagnostic Trouble-shooting, and Repair
     d.  CNC machine repair

5. **People Skills**:
     a.  Assertive Communication Skills
     b.  Project/Job/Work-Order Leader

6. **Educating And Training Entry-Level Electronics Workers**


Based on his mature, responsible, and upright walk in prison since arriving at Marion in early 2011, Mr. Welch has sought to help others on a daily basis, and has greatly affected the positive growth and development of UNICOR-Marion Electronics Cable Factory. I have interacted with both Education and Psychology departments, who say Mr. Welch is a mature, well-adjusted, model inmate. Transcending appearances, he is a terrific asset, and any opportunity he has along the lines of a legal remedy is something we (who interact with him every day) hope and think would be best for him, his family, and society.

Exhibit "C"

Eric D.
10444-08?
U.S. Penitentiary
P.O. Box 1000
Marion, IL 62959

7013 2630 0000 0956 9678

U.S. MARSHALS SERVICE



U.S. POSTAGE
PAID
MARION, IL
62959
SEP 06 16
AMOUNT
$0.00
R2304M115728-02

1099

45202

◇10444-089◇
United States Court Appeal Sixth Circuit
Case Manager: Bryant Crutcher
100 E 5TH ST
Suite 540
Cincinnati, OH 45202
United States

U.S. Court of Appeals
Sixth Circuit
Case Manager: Bryant Crutcher
100 E 5th Street
Suite 540
Cincinnati, OH 45202







